IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED
99 NOV 23 AM 9:12
U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| JANICE ANDREWS, | ) |
| Plaintiff, | ) |
| v. | )   CIVIL ACTION NO. |
| | )   95-AR-3298-S |
| LAKESHORE FOUNDATION, | ) |
| , Defendant. | ) |

ENTERED
NOV 23 1999

**MEMORANDUM OPINION**

In December of 1992, plaintiff, ("Andrews"), filed an EEOC charge against defendant, ("Lakeshore"), alleging that Lakeshore, acting through Andrews' supervisor, Lois Franklin, failed to promote her on account of her race. In February of 1994, Andrews was fired. Andrews claims that Lakeshore fired her in retaliation for filing the EEOC complaint 14 months previously. Lakeshore denies any such motivation and says that Andrews was fired for failing to provide one-on-one supervision to her assigned patient. Andrews disputes the circumstances surrounding the night she allegedly failed to provide one-on-one supervision and says that Lakeshore's articulated reason for her termination is pretextual. There are three main issues: 1) whether the decision-maker(s) knew



of the EEOC charge; 2) whether the length of time between the EEOC charge and Andrew's termination precludes a causal inference; and 3) whether Andrews has cast any real doubt on the legitimate, non-discriminatory reason Lakeshore has articulated as the basis for its decision to terminate her.

**1) Whether the decision-maker(s) knew of the EEOC charge.**

In order to establish her prima facie case, Andrews must show that the decision-maker(s) had knowledge of the previous EEOC charge. In debating the prima facie case, both parties focus on whether the primary decision-maker, Franklin, had knowledge of the EEOC charge.

Andrews "concedes that the Motion for Summary Judgment would be due to be granted if it were undisputed that Ms. Franklin was entirely unaware of the 1992 Charge." (Plaintiff's Response to Defendant's Motion for Summary Judgment at 6.) This concession is puzzling for several reasons. First, Andrews makes the point in her brief that Debbie Smith, the Director of Human Resources, took part in the decision to fire her. Andrews then argues that Smith must have known about the EEOC charge because Smith wrote Lakeshore's position statement at the time of Andrews' termination which stated, "Charging Party had previously filed a racial

2

discrimination claim with the EEOC. . . ."  Furthermore, Andrews points out that Smith was responsible for investigating and responding to EEOC charges, including the one that Andrews alleges she was retaliated against for filing.

While in her deposition Smith said that it was Franklin who made the decision to fire Andrews, Franklin's deposition contradicts Smith's assertion in this regard.  When Franklin was asked during her deposition who made the decision to fire Andrews, she responded: "Myself along with others, the administrator, human resources.  It has to go from one to the other to be approved." (Franklin Depo. at 24.), and that  "The decision was made among the three."  (Franklin Depo. at 25.) Franklin also stated that the three of them investigated the complaint against Andrews for leaving the patient unattended (Franklin Depo. at 25 and 28.) Thus, there is ample, if not undisputed evidence that Smith knew of the previous EEOC charge, and, according to Franklin's own testimony, that Smith took part in the decision to fire Andrews. Yet, in her brief, Andrews concedes that Lakeshore's motion for summary judgment is due to be granted "if it were undisputed that Ms. Franklin was entirely unaware of the 1992 Charge."  Andrews' attorney did not retreat from this position at oral argument on November 12, 1999, saying that there is evidence of Franklin's

3

knowledge. The court agrees with Andrews that there is a genuine dispute over Franklin's knowledge.[1] However, this court does not agree with Andrews that Franklin's lack of knowledge is dispositive at the summary judgment stage. The fact that Smith and Franklin have produced conflicting testimony regarding who made the decision to fire Andrews is enough to preclude summary judgment based on the decision-maker(s)' alleged lack of knowledge.

**2) Whether the length of time between the EEOC charge and Andrews' termination precludes a causal inference.**

Next, Lakeshore argues that Andrews cannot prove the causal element of her prima facie case because even if Franklin had knowledge, the fact that 14 months passed between Andrews' filing of the EEOC charge and her termination precludes any inference that one caused the other. Lakeshore points to several cases in which courts have held that certain time periods automatically prevent plaintiffs from proving a causal relationship. For example, the Eleventh Circuit upheld a district court's grant of summary

---

[1] Andrews offers her own affidavit which says that at an unemployment benefits hearing, Franklin admitted she knew of the EEOC charge. Lakeshore produced a transcript of an unemployment benefits hearing in which Franklin does not admit to knowledge of the EEOC charge. Andrews, however, points out that the transcript is from a different hearing than the one she refers to in her affidavit. Thus, it appears that Franklin's knowledge or her lack thereof is in dispute. However, as explained in the opinion above, summary judgment would be denied even if Lakeshore proved that Franklin had no knowledge of the EEOC charge.

judgment because "The more than 15-month period that elapsed between Appellant's grievance and the alleged adverse employment actions belies her assertion that the former caused the latter." Maniccia v. Brown, 171 F.3d 1364, 1370 (11th Cir. 1999). Likewise, the Fourth Circuit held that "A thirteen month interval between the charge and termination is too long to establish causation absent other evidence of retaliation." Causey v. Balog, 162 F.3d 795, 803 (4th Cir. 1998). The Tenth Circuit held that a four month gap in time prevented an inference of causation. See Conner v. Schnuck Markets, Inc., 121 F.3d 1390 (10th Cir. 1997). Thus, there is authority to support the proposition that the passage of 14 months makes a causal connection impossible. Because this court can detect neither circumstantial nor direct evidence of Lakeshore's "lying in wait," the court is tempted to find, as a matter of law, that the lapse of time precludes the possibility of causation. The case law might justify such a conclusion.

At the same time, a year before Maniccia, the Eleventh Circuit said: "[T]he causal link requirement under Title VII must be construed broadly; 'a plaintiff merely has to prove that the protected activity and the employment action are not completely unrelated.'" Olmstead v. Taco Bell Corp., 141 F.3d 1457, 1460 (11th Cir. 1998) (quoting E.E.O.C. v. Reichhold Chem., Inc., 988 F.2d

5

1564, 1571-1572 (11th Cir. 1993)). <u>Maniccia</u> does not hold that a 15 month time lapse is an <u>automatic</u> bar. And perhaps there is a difference between 15 months and 14 months. Where is the line to be drawn? In light of the Eleventh Circuit's "broad" construction of the causal link requirement in <u>Olmstead</u>, this court at the summary judgment stage will not dismiss a case on the sole ground that the passage of 14 months means that there can be no causation. While the passage of a long period of time is certainly relevant and powerful evidence, it is ultimately up to the jury to draw its own conclusion about the significance of the passage of time. Every retaliation case should not turn on the amount of time that has passed. The Title VII right to a jury trial under such circumstances would disappear.

**3) Whether Andrews has cast any real doubt on the legitimate, non-discriminatory reason Lakeshore has articulated as the basis for its decision to terminate her.**

There remains the issue of whether Andrews has cast enough doubt on Lakeshore's articulated legitimate, non-discriminatory reason for firing her to prevent summary judgment. Lakeshore's stated reason is simple: Andrews was assigned to one-on-one supervision, and she did not provide that supervision in violation of an invariable Lakeshore rule.

After reviewing both Andrews' and Franklin's depositions, and after hearing oral argument, the court concludes that there is enough evidence to create doubt and a genuine issue of material fact as to the truth of Lakeshore's reason for her termination. To begin with, neither party appears to have a very good idea of exactly what happened the night that plaintiff allegedly left her one-on-one patient unattended. No one can remember with clarity whether Andrews was the one officially assigned to the one-on-one patient, although Andrews' counsel stated at oral argument that Andrews put herself in charge and *voluntarily* assumed responsibility for the patient. Also, Franklin claims that she fired Andrews as a result of a complaint voiced by Pat Waldrop, the house supervisor. Franklin said that Waldrop wrote up Andrews for failing to provide one-on-one supervision. Waldrop said in her deposition that on the night in question, she called Franklin to explain what had happened and that Franklin asked her to write up Andrews. However, Waldrop did not write up Andrews. Furthermore, Waldrop stated that in her opinion, even a verbal warning would have been harsh punishment for Andrews. According to Waldrop, the other attendant had left Andrews alone on the hall, so that Andrews had to decide whether to stay with her one-on-one patient and not to answer calls for help from other patients or leave the one-on-

7

one patient temporarily and attend to a patient who had called her for help. Given this Catch-22, a jury could choose to believe that even if Andrews *technically* violated a work rule, it was a rule that could not or should not have been complied with under the unique set of unanticipated circumstances.

In sum, because the court must take the nonmovant's evidence as true and draw all reasonable inferences in her favor, there is enough evidence, or at least enough *confusion* surrounding Andrews' and Franklin's testimony, that a reasonable jury *could* disbelieve Lakeshore's reason for terminating Andrews and find pretext. Whether the court will reach the same conclusion under Rule 50 considerations is another question.

A separate and appropriate order will be entered.

Done this 23rd day of November, 1999.

                                                        WILLIAM M. ACKER, JR.
                                                        UNITED STATES DISTRICT JUDGE